1
2
3                        UNITED STATES DISTRICT COURT
4                              DISTRICT OF NEVADA
5                                    * * *
6    NEW YORK MARINE AND GENERAL              Case No. 2:19-cv-00031-MMD-EJY
     INSURANCE COMPANY,
7                                             ORDER
                          Plaintiff,
8          v.
9    PENSKE TRUCK LEASING COMPANY,
     L.P.,
10
                          Defendant.
11

12   **I.    SUMMARY**

13         This is an insurance coverage dispute. (ECF No. 1.) An employee of Plaintiff New

14   York Marine and General Insurance Company's insured CCR Solutions, Inc. ("CCR") got

15   into an accident while driving a truck rented from Defendant Penske Truck Leasing, L.P.

16   (ECF No. 1 at 1-4.) CCR had purchased the "liability coverage/liability accident insurance"

17   option as part of its contract with Defendant. (*Id.* at 3.) Plaintiff filed this declaratory

18   judgment action against Defendant because Plaintiff contends Defendant must cover at

19   least $300,000 of the liability incurred by CCR and stemming from the underlying accident,

20   but Defendant counters it only owes $15,000 per person/$30,000 per occurrence of liability

21   coverage under the operative contract. (*Id.* at 5.) Before the Court are the parties' cross-

22   motions for summary judgment to resolve this dispute.[1] (ECF Nos. 23, 24.) Because the

23   Court is persuaded Defendant presents the correct view of the unambiguous but disputed

24   contractual language—and as further explained below—the Court will grant Defendant's

25   motion, and deny Plaintiff's motion.

26   ///

27

28         [1]The Court reviewed the parties' responses and replies. (ECF Nos. 29, 30, 33, 34.)
     Plaintiff also filed declarations with exhibits in support of its briefing. (ECF Nos. 25, 26.)

## II.     BACKGROUND

The following facts are undisputed. As pertinent here, CCR is a customer of both Plaintiff, its auto liability insurer, and Defendant, from whom it rented a truck. (ECF Nos. 23 at 2-3, 24 at 3.) CCR is an audio visual and event staging company, which, for example, builds booths and assists with presentations for other companies at trade shows. (ECF Nos. 23 at 6, 24 at 3.) A CCR employee rented from, and returned a truck to, one of Defendant's locations in Las Vegas, Nevada. (ECF Nos. 24 at 3.) In renting the truck from Defendant, CCR and Defendant entered into a written contract. (ECF Nos. 23 at 3, 24 at 3.) CCR selected an option in the contract that Defendant would provide required liability insurance. (ECF Nos. 23 at 3, 24 at 4.) CCR paid extra for this coverage. (ECF No. 24 at 4.) The pertinent portion of the contract between CCR and Defendant provides:

B. Commercial Rental

1. Liability Insurance. Liability Insurance is required during rental. Customer may satisfy this requirement for Commercial Rentals by either electing the Penske provided Coverage or by providing its own coverage, subject to requirements set forth herein. Customer's election of insurance will be noted on the Cover Sheet.

(i) Penske Provides Coverage. If Customer elects Penske Liability Coverage, Penske agrees to provide liability protection for Customer and any Authorized Operator, and no others, subject to any limitations herein, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising from use of Vehicle as permitted by the Rental Agreement, with limits as required by the applicable province, territory or state financial responsibility law (as applicable) or other applicable statute. Notwithstanding any provisions prohibiting non-Penske trailers, if a trailer, cargo handling equipment or any other equipment is furnished by Customer, no protection is provided for liability resulting from such Customer-furnished equipment. Coverage shall automatically conform to the basic requirements of any No-Fault Law which may be applicable, but does not include "uninsured/underinsured motorist," or supplementary "No-Fault," or other optional protection, and the parties hereby reject, to the extent permitted by law, the inclusion of any such protection. Penske warrants that, to the extent permitted by law, the liability coverage described in this paragraph is primary as respects any other insurance available to Customer or any Authorized Operator as defined in this Rental Agreement.

(ECF Nos. 23 at 3-4, 24 at 5.)

2

CCR's employee William Silcox was driving the rented truck when he got in a car accident. (ECF Nos. 23 at 6, 24 at 4.) At the time, he was in the process of delivering some televisions to the Hard Rock Hotel. (ECF Nos. 24 at 4, 25-5 at 4.) The two people in the other car sued CCR, Silcox, and Defendant in state court, seeking, among other things, damages to compensate them for the injuries they suffered in the accident. (ECF Nos. 1 at 4, 23 at 6.) The damages they seek are significant. (ECF No. 1 at 4.)

This case is about who is responsible for paying the damages the plaintiffs may win in the state court case. (*Id.* at 4-5.) In its Complaint, Plaintiff brings a single count for declaratory relief (*Id.* at 5), seeking a declaration that Defendant must pay up to "$300,000, as required by NAC 706.288[,]" of the damages the plaintiffs may win in the state court case (*id.* at 6).

III.    **LEGAL STANDARD**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

1  inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp.*

2  *v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

3      The moving party bears the burden of showing that there are no genuine issues of

4  material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

5  the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting

6  the motion to "set forth specific facts showing that there is a genuine issue for trial."

7  *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings

8  but must produce specific evidence, through affidavits or admissible discovery material, to

9  show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.

10  1991), and "must do more than simply show that there is some metaphysical doubt as to

11  the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting

12  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere

13  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."

14  *Anderson*, 477 U.S. at 252.

15      Further, "when parties submit cross-motions for summary judgment, '[e]ach motion

16  must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v.*

17  *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, *et al.*,

18  *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb.

19  1992) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the

20  court must review the evidence submitted in support of each cross-motion." *Id.*

21  **IV.   DISCUSSION**

22      Defendant argues the operative contractual language only requires it to provide

23  $15,000 per person/$30,000 per accident worth of coverage, the amount specified in

24  Nevada's motor vehicle responsibility act at the time—NRS § 485.3091. (ECF No. 23 at

25  2.) Plaintiff counters that Defendant is required to provide either $300,000 in coverage

26  (relying on NAC § 706.288), or $750,000 (relying on 49 C.F.R. § 387.9). (ECF No. 24 at

27  2.) The Court agrees with Defendant. The Court will address the parties' cross motions

28  together, as their arguments in both motions entirely overlap. The Court will also direct

4

1  entry of judgment for Defendant because the legal issue the parties present to the Court

2  in their cross motions is the only issue the Court must resolve in this case.

3  The Court faces a question of contract interpretation. Interpretation of a contract is

4  a question of law. *See Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003). "A basic rule of

5  contract interpretation is that '[e]very word must be given effect if at all possible.'" *Musser*

6  *v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998) (alteration in original) (quoting *Royal Indem.*

7  *Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966)). Additionally, when

8  construing a contract, a court should consider the contract as a whole and "should not

9  interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 579 P.2d

10  174, 176 (Nev. 1978). Under contract law generally, when a term is unambiguous, a court

11  must construe it from the language contained within it. *See Chwialkowski v. Sachs*, 834

12  P.2d 405, 406 (Nev. 1992). A contract is unambiguous if it is not susceptible to more than

13  one reasonable interpretation. *See Margrave v. Dermody Props.*, 878 P.2d 291, 293 (Nev.

14  1994). "The usual rule of interpretation of contracts is to read provisions so that they

15  harmonize with each other, not contradict each other. That task of construction is for the

16  court." *Peterson v. Minidoka Cty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir.),

17  *amended by* 132 F.3d 1258 (9th Cir. 1997).

18  To start, Defendant's proposed construction of the operative language is

19  reasonable. Defendant argues that "basic automobile liability insurance policy" means

20  what it says, both because that view aligns with the plain text, and because Defendant

21  only intended to provide its customers with the minimum possible insurance because its

22  customers belong to a risk pool it has no control over. (ECF No. 23 at 10-11.) Defendant

23  also argues its proposed construction aligns with constructions of similar contracts

24  adopted by other state and federal courts. (*Id.* at 8-11.) The Court finds these arguments

25  persuasive primarily because the meaning of "basic automobile liability insurance policy"

26  is unambiguous. Absent any intrinsic evidence to the contrary, the Court finds this means

27  a basic automobile liability insurance policy.

28

And here, the intrinsic evidence also points towards this term having its plain and unambiguous meaning. First, the term is immediately prefaced by the phrase "standard provisions[,]" suggesting that the contemplated insurance coverage is a basic, off-the-shelf policy. (ECF No. 23 at 36.) Second, the sentence including the term concludes with "limits as required by the state financial responsibility law or other applicable statute." (*Id.*) While 'state financial responsibility law' is not capitalized, nor does it refer to a specific statute, state financial responsibility laws are common, and the term therefore has a generally understood meaning. *See, e.g.*, *Golden Eagle Ins. Corp. v. Penske Truck Leasing Co., L.P.*, Case No. E062118, 2015 WL 5320546, at *2 (Cal. Ct. App. Sept. 14, 2015) (finding in an unpublished decision that very similar language in Defendant's contract referred to California's financial responsibility law under the circumstances). Further, as Defendant argues (ECF No. 23 at 2), Nevada has a financial responsibility law—the "Motor Vehicle Insurance and Financial Responsibility Act ["MVIFRA"] [.]" NRS § 485.010. Thus, under the circumstances, it is most logical that "the state financial responsibility law" refers to this statute.

The Court is therefore persuaded by Defendant's argument that the operative contractual language only required it obtain the amount of insurance coverage required by the version of NRS § 485.3091 in effect at the time of the accident. And as further explained below, the Court finds Plaintiff's arguments to the contrary unpersuasive. Plaintiff specifically presents two arguments as to why the operative contractual language required Defendant to obtain the higher amount of insurance required of commercial motor carriers. The Court will address both of Plaintiff's arguments.

The Court begins with the most persuasive portion of Plaintiff's arguments—that it is unlikely contractual language referring to the "state financial responsibility law" is referring to the MVIFRA because it is part of a section of the contract titled "Commercial Rentals," and the MVIFRA generally applies to individuals. (ECF No. 33 at 2.) This argument is persuasive because "'[e]very word must be given effect if at all possible.'" *Musser*, 964 P.2d at 54 (citation omitted). And the Court agrees with Plaintiff's argument

1  that, on some level, the operative contractual language is unfair because CCR paid for

2  coverage from Defendant, but the contract is written to only require Defendant to procure

3  the minimum possible coverage for CCR. (ECF No. 33 at 2, 11.) However, these

4  arguments do not persuade the Court to adopt Plaintiff's view because the rest of Plaintiff's

5  arguments are based on an incorrect premise. (ECF No. 24 at 9 (relying on NAC § 706.285

6  to argue that CCR is a "private motor carrier")).

7       Specifically, Plaintiff's arguments would require the Court to impermissibly read

8  additional language into the contract to the effect that CCR is a "motor carrier," as that

9  term is used in Nevada statutes, their corresponding implementing regulations, and

10 federal law. But CCR is not a "motor carrier." The Court begins with Nevada law. Contrary

11 to Plaintiff's argument (ECF No. 24 at 9-10), understanding what "private motor carrier"

12 means requires also understanding what "motor carrier" means, because NAC § 706.285

13 circularly defines "private motor carrier of property" as a "a private motor carrier of property

14 used for private commercial enterprises[.]" NAC § 706.285. Thus, NAC § 706.285 begs

15 the question. What is a motor carrier? A related provision of Nevada's administrative code

16 provides the answer. "'Motor carrier' means any person or operator who is supervised,

17 controlled or regulated pursuant to chapter 706 of NRS." NAC § 706.083.

18       Thus, also contrary to Plaintiff's argument that Nevada's administrative regulations

19 are untethered from the statutes that give them their force (ECF No. 33 at 9), the

20 administrative regulation upon which Plaintiff relies as the keystone of its argument

21 requires the Court to look to the governing statute. And, as Defendant argues, the statute

22 shows that CCR is not a "motor carrier." (ECF No. 29 at 7.) First, CCR is not a "'[p]rivate

23 motor carrier of property' [because that] means any person or operator engaged in the

24 transportation by vehicle of property sold, or to be sold, or used by the person or operator

25 in furtherance of any private commercial enterprise." NRS § 706.111. CCR is an audio

26 visual and events planning company that, for example, helps build sets for conventions.

27 (ECF No. 23 at 26-27.) And at the time of the accident, CCR's employee was transporting

28 some of CCR's televisions to the Hard Rock Hotel. (ECF No. 25-5 at 4.) Thus, CCR was

1   not transporting property sold, or to be sold, to some third party, as NRS § 706.111

2   appears to contemplate. Second, and as Defendant argues (ECF No. 23 at 12-13), these

3   same facts establish that CCR is not a motor carrier because it is subject to the exception

4   in NRS § 706.736(1)(e) for moving "property which is used for any convention, show,

5   exhibition, sporting event, carnival, circus or organized recreational activity." NRS §

6   706.736(1)(e). CCR's employee was transporting CCR's own televisions to set up for a

7   show or exhibition at the Hard Rock Hotel at the time of the accident. (ECF Nos. 23 at 6,

8   24 at 3-4, 25-5 at 4.) This exception therefore applies.

9       Plaintiff's argument that Defendant should be liable for at least $300,000 in liability

10  coverage because CCR is a "private motor carrier of property" thus fails to persuade

11  because CCR is not a "private motor carrier of property." And Plaintiff's argument that

12  Defendant should be liable for at least $750,000 under federal law similarly fails to

13  persuade because CCR is not a "motor carrier."[2] (ECF No. 24 at 10-15.) In addition,

14  Plaintiff's arguments that all flow from that mistaken premise are beside the point. (*Id.*)

15      Indeed, the Court agrees with Defendant that Plaintiff's reliance on a decision from

16  a Connecticut state court actually illustrates why CCR is not a motor carrier. (ECF Nos.

17  24 at 10 (relying *on Martinez v. Empire Fire & Marine Ins. Co.*, 94 A.3d 711, 715 (Conn.

18  App. Ct. 2014), *aff'd on other grounds*, 139 A.3d 611 (Conn 2016)), 29 at 9 (asserting

19  *Martinez* actually helps Defendant).) The *Martinez* court found that the federal Motor

20  Carrier Act did not apply in a case where a driver got in an accident while moving auto

21  parts from one of his employer's shops to another because he was not moving property

22  for a third party. *See* 94 A.3d at 715-18. The facts of this case are similar. CCR's employee

23  was not moving a third-party's property—he was moving his employer's property from one

24  location to another. (ECF No. 25-5 at 4.) Moreover, as Defendant also argues (ECF No.

25  29 at 9), even if *Martinez* helped Plaintiff's position, it would only help to establish that

26

27  _____

28  [2]Defendant persuasively argues Plaintiff has waived this argument by not pleading it (ECF No. 29 at 8-9), but the Court will nonetheless address the merits of Plaintiff's argument because it also finds Plaintiff's argument unpersuasive on its own merits.

1  CCR was required to maintain "motor carrier" insurance, not that Defendant had such a

2  responsibility. Finally, the Court finds the *Martinez* court's definition of "motor carrier" under

3  federal law—by looking to 49 U.S.C.A. § 13102(14)—persuasive. *See Martinez*, 94 A.3d

4  at 715-716. Under 49 U.S.C.A. § 13102(14), "[t]he term 'motor carrier' means a person

5  providing motor vehicle transportation for compensation." That is not exactly what CCR

6  was doing as relevant here. CCR's employee was not simply moving the televisions for

7  pay—the act of moving the televisions was incidental to the overall act for which CCR

8  expected to be paid, which was the event at the Hard Rock Hotel. (ECF Nos. 23 at 6, 24

9  at 3-4, 25-5 at 4.)

10      To summarize, both of Plaintiff's arguments as to why it is entitled to summary

11  judgment—and the declaratory relief it seeks in this case—fail to persuade because they

12  both proceed from the incorrect premise that CCR is a motor carrier.[3] And as explained

13  above, CCR is not a motor carrier as that term is used in Nevada or federal law as applied

14  to the facts of this case. To the contrary, the Court agrees with Defendant that the

15  operative contractual language only required it obtain the amount of insurance coverage

16  required by the version of NRS § 485.3091 in effect at the time of the accident. The Court

17  will therefore grant Defendant's motion, deny Plaintiff's motion, and direct the entry of

18  judgment in Defendant's favor, because there are no other issues for the Court to resolve

19  in this case.

20  **V.    CONCLUSION**

21      The Court notes that the parties made several arguments and cited to several cases

22  not discussed above. The Court has reviewed these arguments and cases and determines

23  that they do not warrant discussion as they do not affect the outcome of the motions before

24  the Court.

25  ///

26

27  _____

28      [3]So too does Plaintiff's argument that NAC § 706.288(4) requires Defendant to procure and maintain a higher amount of coverage because it also depends on the incorrect premise that CCR is a motor carrier. (ECF No. 33 at 10-11.)

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 23) is granted.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 24) is denied.

The Clerk of Court is directed to accordingly enter judgment in Defendant's favor and close this case.

DATED THIS 23rd day of June 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE